**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**HARRIS CORPORATION,**
                **Plaintiff,**

**-vs-**                                                 **Case No. 6:05-cv-1388-Orl-28DAB**

**JERRI L. DUNN,**
**SHARON L. TAYLOR,**
**THOMAS G. COX,**
                **Defendants.**
_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

      This cause came on for consideration without oral argument, following the Court's review of the parties' responses to the Order to Show Cause, issued by the Court (*See* Doc. Nos. 29, 31 and 33).

***BACKGROUND***

      As set forth in the Order to Show Cause, this is an action for interpleader regarding the proper beneficiary(s) of the vested balance in the Retirement Plan account for Buddy Cox, a former Harris Corporation employee, now deceased. The undisputed facts as set forth in the papers show that Harris Corporation ("Harris") sponsors the Harris Corporation Retirement Plan ("the Plan") for the benefit of its employees. Buddy Cox, a former employee of Harris, participated in the Plan, and, at the time of his death (March 2005), the Plan had an accrued balance ("the Fund") that now belongs to his beneficiary(s). The identity of the correct beneficiary(s) is at issue.

      On August 8, 1990, Cox executed a Beneficiary Designation ("the first form"), designating his son Thomas G. Cox as the sole beneficiary. Harris also has in its possession an unsigned and undated beneficiary form ("the second form") in which Sharon L. Taylor, Buddy Cox's daughter, and

Jerri L. Dunn, Cox's friend, are designated as co-beneficiaries of the account. The second form is stamped as received by Fidelity Investments Institutional Operations Co.[1] ("Fidelity") on April 14, 2001, and also stamped as Received, presumably by Harris (as Harris admits to possession of the second form), on April 19, 2001.

The procedures established pursuant to the Plan require that beneficiary forms be signed. The record is silent with respect to what actions (if any) were taken by Fidelity or Harris upon receipt of the unsigned second form. It appears that the second form was received by Fidelity and Harris, without objection raised or request for clarification made to Buddy Cox.

Following Cox's death four years later, Fidelity was notified of same by Dunn and Taylor, who purported to be the beneficiaries. Then, as stated by Harris: "As Plan Administrator, Harris Corporation, through its Employee Benefits Committee ("EBC") considered the claims of the potential beneficiaries." By letter dated May 23, 2005, the Committee issued its determination that Thomas G. Cox was the proper beneficiary of Buddy Cox. The EBC advised Jerri L. Dunn and Sharon L. Taylor of their right to appeal the decision. By letter of June 28, 2005, counsel for Dunn requested a review and appeal of the decision. Harris Corporation now seeks to "resolve[] the administrative appeal" by instituting this interpleader action "to determine the proper beneficiary of the Fund." All the potential beneficiaries were named as Defendants and have appeared before the Court.

Following the filing of the Complaint and Answers, Harris moved for Interpleader, for Interpleader Attorney's Fees, and to be Dismissed from the action, with prejudice (Doc. No. 19). Harris also sought to be excused from attending the case management conference (Doc. No. 20). The

---

[1] The Complaint asserts that Fidelity is a third party administrator for the Plan.

undersigned reviewed the motions and responsive briefs, and issued an Order to Show Cause why the case should not be dismissed for failure to state a ripe case or controversy (Doc. No. 29). Both Harris and Defendant Dunn responded (Doc. Nos. 31, 33).

In its motion, Harris seeks to be dismissed, with prejudice, in order to allow the Defendants to litigate among themselves as to the appropriate beneficiary(s).[2] Harris also seeks an award of attorney's fees and costs.

For the reasons set forth herein, the Court finds this course to be inappropriate. Rather, the undersigned **respectfully recommends** that the case be **abated** while the Plan Administrator finishes what it started and renders the final decision it is obligated to make under the Plan – namely, who is and who is not entitled to the Fund. All claimants will have an opportunity to present pertinent information to the Plan Administrator, and the final decision, when rendered, will be subject to review by this Court based on the administrative record, as is the practice in other ERISA benefit disputes.

### *ISSUES AND ANALYSIS*

As set forth by Plaintiff in its papers, this action is not brought under the interpleader statute, but rather as an ERISA action under 29 U.S.C. § 1132(a)(3) and as an interpleader action pursuant to Fed. R. Civ. P. 22. Section 1132(a)(3) provides, in pertinent part, that a civil action may be brought by (among others) a fiduciary "to obtain . . . appropriate equitable relief" or "to enforce . . . the terms of the plan." 29 U.S.C. § 1132(a)(3). Rule 22 states: "Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability."

---

[2]Although Harris asks to be dismissed, it has agreed to continue to hold the Fund until the Court issues a final determination as to the appropriate beneficiary(s). Considering the nature of the funds and the tax consequences that may result from any distribution, the Court finds Harris' continued stewardship of the Funds to be appropriate.

Although the entire Plan is not before the Court, the provisions that are in the record suggest that the Plan, like most ERISA Plans, has a set procedure in which the Plan Administrator or designee reserves the right to make determinations regarding interpretations of the Plan's terms.[3] Indeed, that was what occurred here. Once an initial determination is made, the Plan provides for an administrative appeal procedure. Pursuant to the claims procedure, section 13.5 of the Plan, a claimant may request review of the determination. Pursuant to the Plan, "If a request for review is so filed, review of the denial shall be made by the Administrative Committee and the claimant shall be given written or electronic notice of the Administrative Committee's final decision within . . . 60 days after receipt of such request." The procedure notes that the final decision "shall notify the claimant of his or her right to bring a civil action under section 502(a) of ERISA." Thus, the Plan clearly sets forth a binding set of procedures, designed to allow for the resolution of all disputes regarding the Plan.[4] The route chosen by Plaintiff here – interpleader following an initial determination by the Administrative Committee – is not available in the Plan, and, in fact, is clearly contradicted by the Plan's provisions, which unambiguously state that the Administrative Committee "shall have the duty and authority to interpret and construe, in its sole discretion, the terms of the Plan in all respects." Having reserved to itself the right **and the duty** to interpret the Plan, and, as the Plan already provides a method to adjudicate disputes consistent with ERISA, Harris has not shown that there is presently a ripe case or controversy within the subject matter jurisdiction of this Court. Under

---

[3]According to Section 13.1(d) of the Plan, attached to the Complaint, the "Administrative Committee shall have the **duty and authority** to interpret and construe, in its sole discretion, the terms of the Plan in all respects, including, but not limited to, all questions of eligibility, the status and rights of Participants, distributees and other persons under the Plan, and the manner, time and amount of payment of any distribution under the Plan. [emphasis added]

[4]The "final" determination by an ERISA fiduciary is ultimately subject to judicial review under varying standards of deference.

the very definition of the Plan it drafted and/or adopted, it is for the Administrative Committee, not the Court, to decide claims between competing beneficiaries. Once a final adjudication is made, the aggrieved party or parties may pursue their rights to review of that decision in court, not before. *See* 29 U.S.C. § 1132(a) (the provision for court review of administrative determinations of an ERISA Plan administrator). In other circumstances, ERISA fiduciaries have not hesitated to seek dismissal of claim denial appeals filed prior to exhaustion of administrative review. No sufficient ground has been shown to permit Harris to shun its duty under the Plan.

In its initial papers, and in the response to the Court's Order to Show Cause, Harris cites numerous decisions (mostly from other circuits) as authority for the principle that interpleader is an acceptable substitute for Harris' obligation to finally determine the matter under the Plan. However, none of those cases persuasively address the issue of prematurity or the effect of the fiduciary's failure to complete its self assigned task of making the beneficiary determination in the first instance. Rather, in those cases, to the extent the issue is even acknowledged, the discussion is perfunctory.

Harris first cites two cases from this circuit as authority for the proposition that the fiduciary "need not first decide between the competing claimants." Neither *Liberty Life Assurance Co. of Boston v. Kennedy,* 358 F.3d 1295 (11th Cir. 2004), nor *Metropolitan Life Ins. Co. v. Williams,* 82 F. Supp.2d 1346 (M.D. Fla. 1999), involved the rendering of an initial determination, as was had here, followed by an interpleader action.[5] Moreover, *Liberty* did not discuss the issue, save for a terse notation that the Plan Administrator in that case "chose not to exercise its authority to decide between

---

[5]Indeed, many of the cases relied upon by Harris are in a similar posture – where the fiduciary chose not to make a determination, but chose to resolve the conflicting claims by filing an interpleader. *See, e.g., Metropolitan Life Ins. Co. v. Pettit,* 164 F.3d 857 (4th Cir. 1998); *Metropolitan Life Ins. Co. v. Marsh*, 119 F.3d 415, 418 (6th Cir.1997); *Aetna Life Ins. Co. v. Bayona,* 223 F.3d 1030 (9th Cir. 2000). As noted, this scenario is not present here.

the competing claims." That is not persuasive or controlling authority for the proposition that a court should substitute its analysis and judgment for that of the fiduciary designated under the ERISA Plan.

Here, Harris or the Plan Administrator accepted without objection the subject beneficiary designation, did nothing to alert its employee to the defects in the form, and, upon receiving competing claims, rendered a decision that the form was not effective. It was not until the administrative appeal was filed that Harris sought to interplead the claims and absolve itself of any liability not only for the Fund, but for any of its own actions or inactions pertaining to the second form. Harris' claim to being a truly disinterested stakeholder rings hollow under these circumstances and serves to distinguish this case from those cited by Plaintiff.

As a prerequisite to a Rule 22 action, Harris must show that it is in danger of being exposed to multiple liability. Although it claims as much in its papers, there is no real risk of even multiple claims until after a final administrative decision is reached. Under the terms of the Plan and ERISA, Harris is under a duty to make a final determination, after which any aggrieved party can appeal. As ERISA preempts any state law claims for the benefits, and no appeal can be instituted until a final determination is made by the Plan, there is presently no risk of multiple suits or liability, and no justification to allow Harris to abdicate its chosen role as decision maker. Indeed, Harris itself must have thought as much as it initially exercised its authority under the Plan to resolve the competing claims and made the determination that Thomas Cox was the proper beneficiary. As all claimants are presently before the Court, there will be no risk of multiple liability if the Court abates[6] this action,

---

[6] The alternative would be to dismiss the action as premature without prejudice to refiling, if necessary, after completion of the internal appeal process. Since all parties are already present, however, abatement seems better course to serve the interests of justice.

-6-

in order to allow Harris to complete its duty to entertain the administrative appeal and issue a final determination, which can then be reviewed by this Court under the appropriate standard of review.

The other cases cited by Harris do not alter this conclusion. In *Metropolitan Life Ins. Co. v. Bigelow,* 283 F. 3d 436 (2d Cir. 2002), the Court mysteriously concluded that to require a plan administrator to do its contractual duty "would exalt form over substance and would assist none of the interested parties." 283 F.3d at 442. The rendering of a final decision is *not* a mere formality under an ERISA plan. The decision by the administrator includes interpreting the plan terms and applicable legal principles and applying its own internal policies and procedures to the particular circumstances at hand. It may also include the development of a complete administrative record. In addition, the decision, once made, is entitled to at least some degree of deference should the matter ultimately come to court. The Second Circuit's conclusory dismissal of these features of the administrative decision is unpersuasive.

Harris cites *Equitable Life Assurance Soc. of U.S. v. Crysler*, 66 F.3d 944, 949 (8th Cir. 1995), for the proposition that ERISA is silent as to the matter of which party shall be deemed beneficiary among disputing claimants, and the policies of ERISA are not intensely affected by the determination of which claimant is entitled to benefits (Doc. No. 31 at 4). While this is true, Harris neglects to note that the Eighth Circuit also stated:

> In reviewing a plan administrator's benefits decision, a threshold question is whether the plan gives the decision-maker discretionary authority to rule on benefit claims. If it does, then the plan administrator or insurer *must* make the initial decision, which the court then reviews under a deferential standard of review. *See Donatelli v. Home Ins. Co.*, 992 F.2d 763, 765 & n. 2 (8th Cir.1993). However, as *Donatelli* illustrates, insurance policies usually do not reserve such discretionary authority to the insurer, in which case the court in an interpleader action such as this may resolve the conflicting benefit claims *de novo*.

66 F. 3d at 949 (emphasis original).  Here, of course, the Plan gives the decision-maker not only discretionary authority but *exclusive* authority to rule on the benefit claims.  As an administrative procedure is already in place to resolve conflicting claims, there is no apparent reason to abandon the contractual provisions in favor of a de novo court determination.

Harris next cites numerous cases for the proposition that interpleader is an equitable action under ERISA.  As applied to the circumstances here, however, Plaintiff is not seeking any form of equitable relief, but is rather seeking a declaratory judgment, regarding its liabilities under the Plan.  In *this* circuit, such an action is not favored.

> A reading of the other subsections of section 1132 makes it even clearer that Congress did not intend ERISA fiduciaries to use declaratory judgment actions to determine the benefit rights of participants/beneficiaries.

*Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520, 1524 (11th Cir. 1987).  Although *Gulf Life* involved a fiduciary attempting to obtain a declaration under ERISA in order to control the venue of the suit, the analysis is applicable here:

> For purposes of ERISA a cause of action does not accrue until an application [for benefits under the plan] is denied. *Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.*, 637 F.2d 357, 361 (5th Cir. Feb.1981), *cert. denied*, 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981); *see Denton v. First Nat'l Bank of Waco*, 765 F.2d 1295, 1297, 1300-03 (5th Cir.1985); *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir.1980). Under Gulf Life's interpretation, a fiduciary therefore would always have an ample opportunity to defeat efforts by participants/beneficiaries to avail themselves of ERISA's broad venue provision; all the fiduciary need do in cases it intended to contest is file a declaratory judgment action in the district where the plan is administered and then, pursuant to section 1132(e)(2), serve the defendant participant/beneficiary in the district where he lives. [FN omitted] Such a procedure would stand ERISA's unequivocal purpose on its head. [FN omitted].

*Id.*, 809 F.2d at 1525.

Particularly in a case such as this, where it appears that timely action by the Plaintiff in clarifying the beneficiary designation could have prevented the controversy in the first place, allowing Plaintiff to shirk its duty (and collect attorneys fees for doing so) seems unfair and markedly inconsistent with the review procedure set forth in ERISA and the Plan. Moreover, allowing interpleader at this stage would leave the Court without a final decision to review under the appropriate ERISA standard. The efficacy of an unsigned beneficiary designation, held by a plan administrator for a period of years, is not, under ERISA, a matter for initial determination by a court.

Absent good cause, plan administrators with exclusive discretionary authority under ERISA plans should be required to make a final determination before seeking judicial relief. *See Life Insurance Co. of North America v. Nears,* 926 F. Supp. 86, 89 (W.D. La. 1996) ("The court, however, declines to impose its subjective preference in this determination where the insurer has clearly contracted for the discretion to exercise its own judgment."); *Egelhoff v. Egelhoff,* 532 U.S. 141, 148 and 149 n.3, 121 S.Ct. 1322, 149 L.Ed 2d 264 (2001) (finding that the payment of benefits is a "central matter of plan administration" in the context of a state statute that revokes a beneficiary designation of a spouse upon divorce, and noting: "The dissent observes that the Washington statute permits a plan administrator to avoid resolving the dispute himself and to let courts or parties settle the matter [internal citation omitted]. This observation only presents an example of how the costs of delay and uncertainty can be passed on to beneficiaries, thereby thwarting ERISA's objective of efficient plan administration."). As no good cause has been shown to dispense with the terms of the Plan Harris contracted for, the motion for interpleader and discharge should be denied, subject to renewal after rendition of a final administrative decision, should a dispute still exist at that time.

**Alternative Consideration of Attorney's Fee Request**

While the Court recommends abatement of this action, in the event the District Court chooses to allow the interpleader action to go forward, it is **respectfully recommended** that Plaintiff's request for an award of attorney's fees be denied.

Plaintiff asserts that it is entitled to fees, as a disinterested stakeholder, citing *Prudential Ins. Co. of Am. v. Boyd*, 781 F.2d 1494 (11th Cir. 1986) and other cases, for the general principle that attorneys fees are often awarded a disinterested stakeholder. However, the language of the cases make clear that any such award is discretionary, and is to be applied consistent with equitable principles. *See, for example, Prudential v. Boyd, id.,* ("In an interpleader action, costs, and attorneys' fees are generally awarded, *in the discretion of the court* to the plaintiff who initiates the interpleader as *a mere disinterested* stakeholder.") (emphasis added); and *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 696 F.2d 359 (5th Cir. 1983) (district court has authority to award costs, including reasonable attorneys' fees, in interpleader actions, but noting that there are circumstances where recovery of fees should be denied). Indeed, as noted by another court: "The court's "authority to make an award is discretionary; there is no right for the stakeholder to recover costs and attorney's fees."" *Life Investors Ins. Co. of America v. Childs*, 209 F.Supp.2d 1255, 1256 (M.D. Ala. 2002). This district has agreed with the Alabama court that attorney's fees are not always justified. *See Metropolitan Life Ins. Co. v. Carter*, 2005 WL 2810699 (M.D. Fla. Oct 27, 2005) (NO. 3:04-CV-668-J32HTS) (denying attorney's fees to stakeholder).

As explained by the Eleventh Circuit:

Attorneys' fees are justified in many interpleader actions for several reasons. First, an interpleader action often yields a cost-efficient resolution of a dispute in a single forum, rather than multiplicitous, piecemeal litigation. Second, the stakeholder in the asset often comes by the asset innocently and in no way provokes the dispute among

-10-

> the claimants. Third, fees for the stakeholder typically are quite minor and therefore do not greatly diminish the value of the asset.
>
> In certain circumstances, however, courts have determined that attorneys' fees are not warranted. One of those circumstances . . . is when a stakeholder's interpleader claim arises out of the normal course of business. Although this standard typically is applied to insurance companies, see, e.g., *Prudential Prop. & Cas. Co. v. Baton Rouge Bank & Trust Co.,* 537 F.Supp. 1147, 1150-51 (M.D. Ga.1982); *Minnesota Mut. Life Ins. Co. v. Gustafson,* 415 F.Supp. 615, 619 (N.D. Ill.1976), it also has been applied to banks, *see, e.g., In re Jones,* 61 B.R. 48, 54 (Bankr. N.D. Tex.1986).
>
> The principle behind the normal-course-of-business standard is simple: an insurance company, for example, avails itself of interpleader to resolve disputed claims to insurance proceeds-disputes that arise with some modicum of regularity. In a sense, the insurance company will use interpleader as a tool to allocate proceeds and avoid further liability. As the costs of these occasional interpleader actions are foreseeable, the insurance company easily may allocate the costs of these suits to its customers. Unlike innocent stakeholders who unwittingly come into possession of a disputed asset, an insurance company can plan for interpleader as a regular cost of business and, therefore, is undeserving of a fee award.
>
> Banks, too, sometimes resort to interpleader in their normal course of business. For instance, when a bank agrees to be the trustee of an estate, the bank knows there is a reasonable probability that various claimants will contest the ownership of a particular asset; since the bank may allocate the costs of that contingency among all its trust customers, there is no basis for awarding the bank fees out of the corpus of the estate.

*In re Mandalay Shores Co-Op Housing Ass'n,* 21 F. 3d 380, 383 (11th Cir. 1994).

Applied here, the dispute giving rise to litigation is prototypically "normal course of business". Moreover, the record does not support a conclusion that Harris was a true "disinterested" stakeholder, who came upon the asset innocently and "in no way provoked the dispute." As noted above, Harris and Fidelity accepted the second form, did not indicate to Buddy Cox or any of the claimants that the second form was inadequate or inoperative when it was received, did not object to the second form or seek clarification from Buddy Cox during the remaining four years of his life, and, when faced with competing claimants, Harris issued a determination that the second form was, in fact, inoperative.

-11-

While Buddy Cox may deserve the lion's share of the blame for failing to sign the form, there can be no doubt that Harris and Fidelity, as fiduciaries, are responsible for assuring compliance with the Plan, and they could have reviewed the second form when it was tendered and caught the error, in time for Buddy Cox to do something about it. By accepting the second form, without objection, they assured that a dispute was inevitable. *See Metropolitan Life Ins. Co. v. Carter*, 2005 WL 2810699 (M.D. Fla. Oct 27, 2005) (finding that the plaintiffs in that case were "not the paradigm innocent stakeholders that find themselves by happenstance in the midst of a morass between adversaries.")[7]

The Court finds that attorney's fees are not appropriate here for another reason – the procedural posture of the case. As set forth above, Plaintiff brought this interpleader only *after* it had already made an administrative determination as to the appropriate beneficiary. Plaintiff admits that it brought this suit in order to "resolve the administrative appeal" which followed this determination. By avoiding the trouble and expense of completing its assigned administrative duties, Harris is in a poor position to ask the ultimate beneficiary to pay its attorneys fees. For similar reasons, the Court declines to recommend that an award be made to Plaintiff under 20 U.S.C.§ 1132(g).

### CONCLUSION AND RECOMMENDATION

For the reasons set forth above, the Court **respectfully recommends** abating this action, directing the Plan Administrator to resolve the administrative appeal undertaken by Defendant Dunn consistent with its obligations under the Plan, and, upon final resolution, any party may return to this Court upon proper motion and seek review of the decision, under the appropriate standard. The motion for interpleader should be **denied,** as premature.

---

[7] It also appears that Fidelity may have taken an inconsistent position by offering a tender to Dunn, as a beneficiary. *See* Attachments to Doc. No. 19.

Should the Court decline to adopt this recommendation, and choose to grant the motion to interplead, it is **respectfully recommended** that the motion for interpleader be granted only in part**;** Plaintiff should be dismissed from active participation in the suit, but, due to the continued stewardship of the Funds at issue, the dismissal should be with recognition that Plaintiff is still subject to the jurisdiction of this Court with respect to management of the Fund during the pendency of this litigation and final distribution of the Fund.

The motion for attorney's fees should in any event be **denied.** The issue of costs must await the conclusion of the litigation and should be taxed in the normal course. Although Harris seeks an injunction barring any defendant to this action, and their successors and assigns, from instituting any action against Plaintiff with respect to the Fund, the Court recommends that this request be deferred, pending further factual development of the record. The Court notes that the Estate of Buddy Cox is not a named party, but could well be included in the  broad language of any such injunction.[8]

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on March 7, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy

---

[8]*See* Complaint , Exhibits at page 8 and 9, indicating that the Estate is being administered and is represented by one Brenda Cook.