# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JERRI L. DUNN,**
**SHARON L. TAYLOR,**

                    **Plaintiffs,**

**-vs-**                                        **Case No.  6:05-cv-1388-Orl-28DAB**


**THOMAS G. COX,**
                    **Defendant.**
_____

## ORDER AND NOTICE OF HEARING

This cause came on for consideration without oral argument on the following motions filed

herein:

| | |
|---|---|
| **MOTION:** | **MOTION TO LIFT ABATEMENT ON THE CASE (Doc. No. 79)** |
| **FILED:** | **August 16, 2007** |
| | |

**THEREON** it is **ORDERED** that the motion is **GRANTED** in part.

| | |
|---|---|
| **MOTION:** | **MOTION TO COMPEL SETTLEMENT (Doc. No. 80)** |
| **FILED:** | **August 16, 2007** |
| | |

**THEREON** it is **ORDERED** that the motion is **DENIED**.

On May 31, 2007, Attorney Herbert Hill, counsel for Plaintiff Jerri Dunn,[1] filed an unopposed

motion to abate this action, noting that mediation had reached an impasse "because of the existence

_____

[1]Ms. Dunn was decedent Buddy Cox's significant other.  Co-Plaintiff Taylor and Defendant Cox are Cox's children.

of issues separate and apart from the instant cause of action pertaining to the Estate of decedent Buddy Cox" and that "the parties are desirous of further exploring whether additional informal negotiations time might lead to a resolution of the issues in the pending cause of action if not all of the pending legal issues between them." (Doc. No. 77).  The Court obliged and abated the action (Doc. No. 78).

According to the instant motions, following abatement, the parties continued to discuss settlement.  Attorney Hill admits that he and Defendant, appearing *pro se*:

> discussed the related litigation between the parties concerning the decedent's estate which is the subject of extensive litigation and appeals. Cox indicated a desire to resolve all the issues at once but undersigned counsel pointed out that this was not a possibility because one of the parties to the estate litigation, the personal representative, (the sister of Cox and Taylor) was not a party to the instant litigation. The basic outline of the settlement insofar as it related to the split of the monies between Cox, Dunn and Taylor was discussed. During further conversation that same day, both Cox and Taylor indicated that they wanted Dunn to indemnify and protect them against any claims by their sister, the personal representative of the estate. Dunn advised that she could not do so because she did not know what those claims might be.

(Doc. No. 80 at 3).

Despite this acknowledged failure to agree on what appears to be key points, Hill  contends that the parties had a "specific meeting of the minds" regarding the split of the 401(k) fund at issue in this litigation and any recovery against Harris in subsequent litigation, and reached a "specific understanding" regarding legal representation and fees for such litigation.  According to the unsigned agreement drafted by Hill and attached to the papers, Hill was to represent all the parties in a future suit against Harris and was to be compensated in accordance with a specific fee schedule.

According to Hill, Defendant retained an attorney to look over the settlement documents tendered by Hill, and the attorney "for the first time mentioned that there was a new condition of a "global settlement" now being placed on the settlement by Cox." (Doc. No. 80 at 4).  Hill objected

and the proposed settlement documents were never executed.  According to the papers filed by Cox (Doc. Nos. 83, 84), this was not a new condition, as it was always his position that any agreement must resolve all of the outstanding issues.

Attorney Hill now seeks, purportedly on behalf of Plaintiff Dunn, entry of an Order "directing Cox and Taylor to sign the settlement documents and proceed as contemplated by their agreement." Thus, Attorney Hill wants the Court to, among other things, force two unwilling parties to hire Mr. Hill as their attorney,  despite the fact that they have manifested a clear intent not to do so.  The Court finds this request entirely inappropriate.

As this Court has previously noted, the party seeking to enforce a settlement agreement bears the burden of showing the opposing party assented to the terms of the agreement. *Christopher v. Damiano Long, LLC,* 2007 WL 1839288, *2 (M.D. Fla. 2007), *citing Carroll v. Carroll*, 532 So.2d 1109 (Fla. 4th DCA 1988), *rev. denied*, 542 So.2d 1332 (Fla.1989). "To compel enforcement of a settlement agreement, its terms must be sufficiently specific and mutually agreed upon as to every essential element."*BP Products North America, Inc. v. Oakridge at Winegard, Inc*., 469 F.Supp.2d 1128, 1133 (M.D. Fla. 2007), *citing Don L. Tullis and Assoc., Inc. v. Benge*, 473 So.2d 1384 (Fla. 1st DCA 1985).  A trial court's finding that there was a meeting of the minds between the parties must be supported by competent substantial evidence.  *Id.*

The Court finds that the undisputed evidence establishes that there was no meeting of the minds here.  As for the portion of the agreement that appears to address the "split" of the 401k account at issue here, the above facts establish that Cox sought a global settlement from the start; his desire was not, as portrayed by Hill, newly asserted after agreeing to the settlement.  Indeed, part of the reason cited by Hill in support of the requested abatement was to give the parties an opportunity to

resolve *all* issues.  Hill's recitation that he told Cox that such a settlement was not "possible" is nothing more than an assertion of his opinion; it does not reflect that Cox *agreed* to waive that condition and proceed without it.  Hill's draft agreement, which did not include global settlement language, was at best a counteroffer, which the evidence establishes was rejected by Cox.  No document was ever signed and no meeting of the minds ever occurred with respect to this essential term.  There is nothing to enforce.

The Court also notes that the proposed "settlement agreement" does not merely purport to compromise an existing dispute, it is also a retainer agreement and an agreement with respect to *future* litigation.  The conflicts of interest in this case [2] and Mr. Hill's present position seeking to force Mr. Cox to retain him are troubling to this Court.  Not surprisingly, Mr. Hill cites no case where a court forced an unwilling adversary to hire opposing counsel to represent him in future litigation.  Indeed, the Court suspects that Mr. Hill's involvement here may well require his disqualification in *all* future litigation between these parties, including the instant case.

The motion to compel settlement is therefore **denied** and the motion to lift abatement is **granted, in part.**  As it appears the case is at a standstill with respect to settlement, the parties are **directed to TAKE NOTICE** that a case management conference will be held before the undersigned on **MONDAY**, **SEPTEMBER 24, 2007** at **11:00 A.M.** in Courtroom #6D, George C. Young U.S. Courthouse and Federal Building, 401 W. Central Boulevard, Orlando, Florida. **PLEASE NOTE**: **Photo I.D.** is required to enter the United States Courthouse.  Also, **cellular telephones** and

---

[2]In addition to the obvious adversarial relationship inherent in this case, note, too, Mr. Cox's expressed desire to have Mr. Hill's current client indemnify him with respect to the estate claims.

**laptop computers** are prohibited in the Courthouse unless otherwise allowed pursuant to order of the

Court.

      **DONE** and **ORDERED** in Orlando, Florida on September 5, 2007.

                             *David A. Baker*

                             DAVID A. BAKER
                             UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties